IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ASU Students for Life, et al., ) | No. CV-06-1824-PHX-MHM |
| ) | |
| Plaintiffs, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Michael M. Crow, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

TO THE HONORABLE MARY H. MURGUIA, UNITED STATES DISTRICT JUDGE:

  Defendants sent Plaintiff Christopher White (White) a Rule 34 request asking for all communications with Justice for All (JFA), all communications related to the JFA exhibit, and any and all other documents related to the JFA exhibit. Defendants also sent a subpoena to JFA asking for all its communications with White and the Alliance Defense Fund (ADF) relating to the display which is the subject of this action. ADF, on behalf of White and JFA, asserted the attorney-client privilege and refused to produce certain e-mails and other communications covered by Defendants' requests.

  Judge Murguia held a hearing on the issue. After hearing argument, Judge Murguia directed counsel for defendants to "put in writing what he is specifically requesting" and referred the matter to Magistrate Judge Voss to "review the documents . . . and submit a report and recommendation to the Court with respect to [the] discovery dispute. . . ." (Doc. 30)

Judge Voss has reviewed Mr. Goodwin's revised request and the documents produced in response to the revised request. The issues were discussed informally with both Mr. Goodwin and Ms. Hacker.

Mr. Goodwin contends that the attorney-client privilege does not apply to these documents and, if so, it has been waived (Goodwin letter of June 5, 2007).

The attorney-client privilege is "the oldest of the privileges for confidential communication known to the common law." In re Columbia/HCA Healthcare Corp., 293 F.3d 289, 303 (6th Cir. 2002). Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Jaffee v. Richmond, 518 U.S. 1, 11 (1996). The tension, of course, arises when one tries to balance the need to protect the privilege while ensuring truthful fact-finding. Many courts, recognizing that a strict application of the privilege can lead to obfuscation and injustice, quote Wigmore's thoughts on the matter with approval: "Its benefits are all indirect and speculative; its obstruction is plain and concrete . . . . It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 J. Wigmore §2291, at 554. See, e.g., U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002); In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973); U.S. v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976).

A majority of the courts that have struggled with the need to balance these important interests apply a strict scrutiny standard Wiel v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981). Indeed, the party asserting the privilege has the burden to prove the privilege applies. Martin, 278 F.3d at 999-1000. To prove the privilege applies, the proponent must establish each of the following elements:

> (1) Where legal advice of any kind is sought
> (2) from a professional legal advisor in his capacity as such,
> (3) the communications relating to that purpose,
> (4) made in confidence
> (5) by the client,
> (6) are at his instance permanently protected
> (7) from disclosure by himself or by the legal advisor,
> (8) unless the protection be waived.

- 2 -

1  Matter of Fischell, 557 F.2d 209, 211 (9th Cir. 1977).

2       Initially, Defendants assert that there is no attorney-client relationship between White
3  and JFA. White is one of the individual Plaintiffs and was the Director of Public Relations
4  for ASU Students for Life (ASUSL), another Plaintiff. JFA had a substantial display that
5  local student organizations at universities and colleges across the country would utilize to
6  communicate their pro-life message. Arizona State University (ASU) required any student
7  organization desiring to utilize the campus to communicate its particular message to obtain
8  a permit. JFA, with some regularity, encountered what it believes were improper, if not
9  unconstitutional, restrictions on the issuance of permits to set up its display, provide written
10 material, and orally engage those responding to the message. As such, JFA had in-house
11 counsel to help guide it and different student associations through the process and, if
12 necessary, aggressively protect what JFA asserts are its, and the various student associations,
13 First Amendment rights.

14      On December 1, 2005, White submitted the requisite Outdoor Event and Sales
15 Request Form to reserve space on campus for ASUSL's planned use of JFA's display. (P's
16 complaint ¶39). ASUSL's request was rejected as filed and disputes arose regarding such
17 things as what zones were available, how many could be reserved, fees, and, ultimately,
18 proof of insurance.

19      At this first meeting it was clear to White that there may be a legal issue and he
20 needed to seek legal advice. White testified in his deposition he told Nancy Schroeder
21 (Schroeder), the Program Coordinator at ASU, at the December 1, 2005 meeting that he
22 needed the policy relied upon by Schroeder in writing so White could share it with ASUSL's
23 attorney and thereafter decide how to proceed. (White Dep. 34:5-21). The attorney referred
24 to was Jim Spencer (Spencer), general counsel for JFA.[1]

---

[1] The attorney-client privilege applies equally to in-house counsel. U.S. v. United Shoe Machinery Corp., 89 F. Supp. 357, 360 (D Mass. 1950).

- 3 -

1   White called Spencer on December 1, 2005, (White Dep. 34:22-25, 35:2-5), and
2  followed up with an e-mail on the same date. When White called Spencer, he clearly did
3  so because he had encountered a problem. It appeared to White that ASU, without any
4  written policy, was imposing requirements on ASUSL not imposed on others similarly
5  situated, and he contacted Spencer to provide him with the facts[2] and seek guidance. A
6  review of the December 1, 2005 follow-up e-mail confirms this conclusion. Elements one
7  through three and five of Wigmore's attorney-client elements test have been met.

8   Element four requires that the communication be made in confidence. Defendants
9  argue that because Plaintiffs copied others, the communications were not made in
10 confidence. It is true that several others were copied with the communications from White
11 to Spencer. However, all those copied were either other attorneys or directly involved in the
12 display project on behalf of either ASUSL or JFA. The White communications were shared
13 with those having a reasonable need to know about the content of the communications and
14 steps were taken to preserve the confidentiality of the communications. In re Bieter Co., 16
15 F.3d 929, 939 (8th Cir. 1994) (disclosure of communications to person who was the
16 "functional equivalent of an employee with a need to know did not cause waiver).[3] The
17 communications were made in confidence, satisfying Wigmore's fourth element.

18   The sixth and seventh elements of Wigmore's test deal with the protection afforded
19 and who may disclose. We are not concerned with those elements here.

20   Concerning waiver, Defendants posit that because others received copies of the e-
21 mails, there was a waiver. We discussed this issue in the "made in confidence" section,
22 supra. The reasoning there applies here and Defendants' argument is rejected.

---

[2] Virtually all types of communications or exchanges between a client and attorney may be covered by the attorney-client privilege. Privileged communications include essentially any expression undertaken to convey information in confidence for the purpose of seeking or rendering legal advice. Haines v. Liggett Group, Inc., 975 F.2d 81, 90 (3rd cir. 1992).

[3] Disclosure does not occur when communications are shared between parties having a common interest. 8 J. WIGMORE, EVIDENCE §3412 (1992).

- 4 -

Defendants also argue that because JFA is not a party to this litigation ADF cannot invoke the privilege on behalf of JFA. ADF has for a long time had a standing attorney-client relationship with JFA. Indeed ADF has appeared as counsel for JFA in at least three federal cases (ADF letter of June 6, 2007, p.2.). It is axiomatic that the existence of an attorney-client relationship does not require actual litigation. This argument is rejected.

The court, therefore, concludes that when the communications in question were transmitted, an attorney-client relationship existed between White and JFA, White and ADF, and ADF and JFA. Further, that the attorney-client privilege derived from that relationship was not waived. Accordingly, the items provided to the Court for inspection are privileged. This court will therefore recommend that production not be required.[4]

**IT IS RECOMMENED:**

That Defendants' request to compel production be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the

///

---

[4] Two documents are not protected communications as they, for example, simply forward a particular document that is not privileged. Those documents are listed on Attachment "A" hereto and shall be disclosed.

- 5 -

1  Magistrate Judge will be considered a waiver of a party's right to appellate review of the
2  findings of fact in an order of judgement entered pursuant to the Magistrate Judge's
3  recommendation.  <u>See</u> Fed. R. Civ. P. 72.
4       DATED this 11th day of July, 2007.

*/s/ Edward C. Voss*
Edward C. Voss
United States Magistrate Judge

Attachment "A"

1)  E-mail of February 3, 2006, 6:25 p.m., White to Hacker
    Simply forwards Novak e-mails.

2)  E-mail of January 9, 2006, 9:28 a.m. from legal@jfaweb.org to Hacker
    Notice of change of general counsel for JFA.