**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ASU STUDENTS FOR LIFE, et al., ) | No. CV 06-1824-PHX-MHM |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| MICHAEL M. CROW, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

Currently before the Court are Plaintiffs Arizona State University Students for Life ("ASU Students for Life"), Katherine Brind'Amour, Sara Combellick, Jeffrey Malkoon, and Christopher White's motion for summary judgment (Dkt. #64); Plaintiffs' motion for judicial notice (Dkt. #97); and Defendants Michael Crow, Sally Ramage, and Judy Schroeder's cross-motions for summary judgment (Dkt. #s 76, 77, 78). Plaintiffs challenge the constitutionality of Arizona State University's ("ASU") insurance requirement for off-campus groups or entities and ASU's "one-zone" reservation requirement under the First and Fourteenth Amendments to the United States Constitution. Defendants counter that Plaintiffs are prohibited from asserting their claims due to the doctrines of standing and mootness, individual and qualified immunity, and the 11th Amendment. In addition, Defendants contend that ASU's insurance and one-zone requirements do not violate the First Amendment. After consideration of the pleadings and holding oral argument on March 4, 2008, the Court issues the following Order.

# I.     FACTUAL & PROCEDURAL BACKGROUND

ASU Students for Life is one of approximately 500 student organizations at ASU. (Plaintiffs' Statement of Facts, Dkt. #69, p.3; Defendants' Joint Statement of Facts, Dkt. #75, p.3).  The mission of ASU Students for Life is "to educate the student body of ASU about pro-life issues from conception to natural death, with emphasis on beginning of life issues." (Dkt. #69, p.1).  Plaintiffs Brind'Amour, Combellick, and Malkoon are students at ASU, each of whom held various official positions in ASU Students for Life during the 2006-07 academic school year. (Id., pp.1-2).  Plaintiff White graduated from ASU in December 2006; he was Director of Public Relations for ASU Students for Life from March 2005 to March 2006. (Id., p.2).

Defendant Crow is currently, and at all relevant times hereto, the President of ASU. (Id.).  Defendant Ramage was the Interim Vice President for Student Affairs from August 2005 to May 2006. (Id.).  Defendant Ramage retired from ASU on July 1, 2007. (Dkt. #75, p.10).  Defendant Schroeder is currently, and at all relevant times hereto, Senior Program Coordinator in ASU's Event and Meeting Services office; her duties include assisting student organizations in scheduling and coordinating activities at ASU's Memorial Union and making reservations for student organizations that want to conduct outdoor events on the ASU campus.  (Dkt. #75, p.2).  There are 40 outdoor spaces, or zones, available for reservation by student organizations.  (Id.).  ASU regulates the use of outdoor zones by student organizations, university departments, and off-campus groups or entities. (Dkt. #69, p.7). Student organizations may reserve outdoor zones by submitting an "Outdoor Event and Sales Request Form" ("Event Form"), and they may also sometimes orally reserve outdoor zones.  (Dkt. #69, p.6; Defendants' Response to Plaintiffs' Statement of Facts, Dkt. #89, p.10). From January 2005 to May 2006, ASU's Event and Meeting Service's office booked approximately 6,000 reservations for use of outdoor zones on the ASU campus.  (Dkt. #89, p.13).

On December 1, 2005, Plaintiff White submitted an Event Form on behalf of ASU Students for Life to reserve sixteen outdoor zones on the ASU campus in order to display an

exhibit owned by Justice for All ("JFA"), a Kansas non-profit corporation, for four consecutive days in February 2006. (Dkt. #69, p.7; Dkt. #75, p.3). JFA shares its exhibit with student groups on college campuses around the country. (Dkt. #69, p.8). The JFA exhibit involves several large panels, 8 feet wide by 16-18 feet high, that display images and text that support a pro-life message. (Dkt. #69, p.7; Dkt. #75, p.3). Defendant Schroeder reviewed Plaintiffs White's reservation request and informed him that ASU Students for Life would not be able to reserve the number of zones they requested; although most of the zones that Plaintiff White requested were not previously reserved by other student organizations, Defendant Schroeder told Plaintiff White that there was a "one-zone" reservation policy per student organization and thus ASU Students for Life would be limited to one zone for the JFA exhibit. (Dkt. #69, pp.8-9; Dkt. #75, p.4).    However, Defendant Schroeder also informed Plaintiff White that ASU Students for Life could reserve additional zones if they were able to get other student organizations to co-sponsor the JFA exhibit. (Dkt. #69, p.9; Dkt. #75, p.4). At that time, ASU's one-zone requirement was not an explicit written policy. (Dkt. #89, p.4).

On December 19, 2005, Defendant Schroeder informed Plaintiff White that JFA would have to submit a certificate of insurance and pay a $300 fee for the ability to come onto the ASU campus due to a policy regarding vendors and insurance indemnification that was scheduled to go into effect in January 2006. (Dkt. #69, pp.10-11; Dkt. #75, p.4). According to ASU policy, if a student organization wants an off-campus group or entity to participate in an on-campus event, the off-campus group must pay a fee and be sponsored by the student organization. (Plaintiffs' Response to Defendants' Joint Statement of Facts, Dkt. #85, p.9; Dkt. #75, p.5). In addition, ASU policy STA 503-01, "Scheduling Outdoor Campus Activities Area," effective November 1, 2005, through November 1, 2006, and ASU's Student Club Vendor Checklist stated that "vendors" are required to obtain a certificate of insurance before conducting activities on the ASU campus. (Dkt. #75, p.5; Dkt. #69, p.21). ASU administrators interpret the word "vendor" to mean any third-party or off-campus entity that comes onto the ASU campus. (Dkt. #69, p.13; Dkt. #89, p.7).

1    ASU Students for Life objected to Defendant Schroeder's application of the one-zone

2    reservation policy and the fee and insurance requirements to the JFA exhibit, and Defendant

3    Schroeder subsequently met with ASU's General Counsel, Nancy Tribbenesee, to discuss

4    these requirements.  (Dkt. #75, p.5).  ASU administrators ultimately waived the $300 fee and

5    allowed Students for Life to reserve multiple zones for the JFA exhibit.  (Dkt. #75, p.6).

6    Defendant Schroeder referred Plaintiff White to ASU Student Risk Manager Kim

7    Novak for assistance in procuring insurance coverage for the JFA exhibit through the Tenant

8    and Users Liability Insurance Program ("TULIP"), administered by Bene-Marc, Inc., a

9    private insurance company.  (Dkt. #69, p.9).  Plaintiff White states that the insurance quotes

10   that were obtained from TULIP to cover the JFA exhibit ranged from approximately $400

11   to $1,200.  (Dkt. #69, pp.9-10).  However, Plaintiff White ultimately arranged for ASU

12   Students for Life to obtain a rider on the insurance policy of Arizona Right to Life, an

13   Arizona non-profit corporation, for $103.25.  (Dkt. #69, p.10)  Plaintiff White subsequently

14   submitted proof of the insurance rider to ASU and the JFA exhibit was allowed to proceed.

15   (Dkt. #69, p.11).  ASU Students for Life later reimbursed Arizona Right to Life for the

16   amount of the rider.  (Dkt. #69, p.10).

17   In March 2006, ASU Students for Life planned an event called "Dignity of Life

18   Week" to take place on April 17-21, 2006, and requested to reserve multiple zones on which

19   to set up informational tables around the ASU campus.  ASU Students for Life also requested

20   to have "Silent No More," an off-campus organization, set up an information table next to

21   their tables.  (Dkt. # 75, pp.8-9).  Defendant Schroeder informed Plaintiff White that an off-

22   campus third-party had to provide a certificate of insurance in order to come onto campus

23   and set up their own informational tables.  (Dkt. #69, p.18; Defendants' Response to

24   Plaintiff's Statement of Fact, Dkt. #89, p.10).  However, Defendant Schroeder later told

25   Plaintiff White that Silent No More was not required to present proof of insurance because

26   Silent No More was not a "formal organization," and as long as off-campus individuals are

27   volunteers and not paid employees of an off-campus formal organization, proof of insurance

28   is not required.  (Id.).  Defendant Schroeder also stated that ASU only requires proof of

1   insurance when a student organization sponsors an off-campus group to come onto the ASU

2   campus to set up their own informational table, separate from the student organization's

3   table.  (Dkt. #69, p.19; Dkt. #75, p.9).

4           On July 21, 2006, Plaintiffs filed a complaint under 42 U.S.C. § 1983 alleging that

5   Defendants violated the Free Speech Clause of the First Amendment and the Due Process

6   and Equal Protection Clauses of the Fourteenth Amendment through their discriminatory

7   enforcement of ASU's unwritten one-zone policy against ASU Students for Life and the

8   application of ASU's policy that "vendors" pay a fee and obtain a certificate of insurance

9   before participating in on-campus events to ASU Student's for Life's February 2006 JFA

10  exhibit.  (Compl., Dkt. #1).  Plaintiffs request declaratory and injunctive relief, nominal and

11  compensatory damages, and attorneys' fees and reasonable costs pursuant to 29 U.S.C. §

12  1343.

13          On November 1, 2006, ASU renumbered ASU policy STA 503-01 to USI 802-01 and

14  updated the policy to include the one-zone rule limiting student organizations to reserving

15  one zone per day for outdoor events on the ASU campus and to specify that the policy

16  applied to "vendors and other third parties."  (Dkt. #69, pp.20,21).  ASU's insurance policies

17  do not contain an exception for organizations that cannot afford to pay for insurance.  (Dkt.

18  #69, p.21; Dkt. #89, p.11).  Then, on July 23, 2007, the parties filed their instant motions for

19  summary judgment.  (Dkt. #s 64, 76, 77, and 78).

20

21  **II.     DISCUSSION**

22          Plaintiffs contend that ASU's insurance and one-zone requirements violate Plaintiffs'

23  First Amendment right to free speech and Fourteenth Amendment rights to due process and

24  equal protection.   Specifically, Plaintiff's argue that ASU's insurance and one-zone

25  requirements: (1) amount to unconstitutional prior restraints on speech; (2) give Defendants

26  unfettered discretion to restrict speech based on its content; (3) constitute unconstitutional

27  content and viewpoint discrimination; and (4) are unconstitutionally vague and overbroad.

28  In addition, Plaintiff's argue that Defendant's application of the insurance and one-zone

1  requirements to Plaintiffs' February 2006 JFA exhibit and April 2006 "Dignity of Life
2  Week" event amount to differential treatment of similarly situated organizations in violation
3  of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs assert both facial
4  and as-applied constitutional challenges to ASU's insurance and one-zone requirements.

5        Defendants contend that the instant action is limited if not precluded by the doctrines
6  of standing and sovereign and qualified immunity.  In addition, Defendants contend that the
7  instant action is moot because ASU codified the challenged insurance and one-zone policies
8  when it amended ASU policy STA 503-01 on November 1, 2006.  Moreover, Defendants
9  contend that ASU's insurance and one-zone policies do not violate the First and Fourteenth
10  Amendments because they are viewpoint and content neutral, and they are neither vague nor
11  overbroad under the First Amendment.

12        The parties dispute the extent to which ASU's one-zone policy was applied to student
13  organizations other than ASU Students for Life prior to the occurrence of the JFA exhibit in
14  February 2006.  (Dkt. #s 85, 89).  The parties also dispute the extent to which ASU's
15  insurance policy was applied to third-party off-campus groups or entities prior to ASU
16  Students for Life's request to display the JFA exhibit.  (Id.).

17

18        **A.  Standard of Review**

19        A motion for summary judgment may be granted only if the evidence shows "that
20  there is no genuine issue as to any material fact and that the moving party is entitled to
21  judgment as a matter of law." FED.R.CIV.P. 56(c).  The Court views the evidence in the light
22  most favorable to the nonmoving party and draws any reasonable inferences in the
23  nonmoving party's favor.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995),
24  cert. denied, 516 U.S. 1171 (1996).  A material issue of fact is one that affects the outcome
25  of the litigation and requires trial to resolve differing versions of truth.  S.E.C. v. Seaboard
26  Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  To defeat the motion, the non-moving party
27  must show there are genuine factual issues "that properly can be resolved only by a finder
28  of fact because they may reasonably be resolved in favor of either party."  Anderson v.

1   Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is appropriate against

2   a party who "fails to make a showing sufficient to establish the existence of an element

3   essential to that party's case, and on which that party will bear the burden of proof at trial."

4   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

5

6          **B.   Motion for Judicial Notice**

7          As an initial matter, Plaintiffs move the Court to take judicial notice of eleven

8   exhibits, Exhibits A-K, that were submitted by affidavit of Heather Hacker, one of Plaintiffs'

9   counsel of record, in support of Plaintiffs' motion for summary judgment.  (Dkt. #97).

10  Defendants object to this motion.  (Dkt. #100).

11          FED.R.EVID. 201 provides that "[a] court shall take judicial notice if requested by a

12  party and supplied with the necessary information."  Judicial notice of an adjudicative fact

13  must "not [be] subject to reasonable dispute in that it is either (1) generally known within the

14  territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

15  resort to sources whose accuracy cannot reasonably be questioned. FED.R.EVID. 201(b); see

16  also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (judicial notice may be

17  taken of public records); Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d

18  1022, 1025 n. 2 (9th Cir. 2006) (citing Newcomb v. Brennan, 558 F.2d 825, 829 (7th Cir.

19  1977) ("[C]ity ordinances fall within the category of 'common knowledge' and are therefore

20  proper subjects of judicial notice.")).

21          Exhibits A, C, G, and J are printouts of information contained on various ASU

22  websites – Exhibit A is a printout of a general description of Defendant Crow's duties as

23  President of ASU and Exhibits C, G, and J are printouts of the booking details for three

24  events – Body Pride Fair, Memorial to Fallen Soldiers, and Democracy for a Change – from

25  ASU's Virtual Calendar. (Affidavit of Heather Hacker, Dkt. #71). Plaintiffs request that the

26  Court take judicial notice of Defendant Crow's duties as President of ASU and the

27  occurrence of the three aforementioned events on the ASU campus.  However, the Court

28  notes that internet printouts of this sort are quite unlike the publication of city ordinances on

1    government websites, and as such they do not automatically fall within the category of

2    "common knowledge."  Indeed, Defendant Crow's duties as President of ASU as they relate

3    to the instant matter are both subject to dispute and are not generally known within the

4    jurisdiction of this Court.  Thus, the Court declines to take judicial notice of Exhibit A.

5             In addition, the printouts of ASU's Virtual Calendar do not by themselves establish

6    the fact that three events listed therein took place on the ASU campus; likewise, the fact

7    regarding whether any particular event occurs on the ASU campus is not necessarily a fact

8    that is generally known within the jurisdiction of this Court.  However, Plaintiff also moves

9    for judicial notice of Exhibits B, E, and F, which are internet printouts of articles that discuss

10   the occurrence of the three events listed in Exhibits C, G, and J on ASU's Virtual Calendar.

11   (Dkt. #71).  Although the Court may not take judicial notice of the veracity of the statements

12   in these articles, the articles in Exhibits B, E, and F may be viewed in conjunction with

13   Exhibits C, G, and J to establish the fact that the three events listed on ASU's Virtual

14   Calendar in Exhibits C, G, and F did in fact take place on the ASU campus.  See, e.g.,

15   Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991) (taking judicial notice of

16   newspaper articles publicizing certain events in the area); Ritter v. Hughes Aircraft Co., 58

17   F.3d 454, 458-59 (9th Cir. 1995) (taking judicial notice of a newspaper article to establish

18   the fact that widespread layoffs had occurred).  Moreover, the Court notes that Defendants

19   acknowledge the occurrence of the Body Pride Fair, Memorial to Fallen Soldiers, and

20   Democracy for a Change events on the ASU campus in their Response to Plaintiffs'

21   Statement of Facts.  (Dkt. # 89, p.13).  Thus, the Court will take judicial notice of the

22   undisputed fact that the Body Pride Fair, Memorial to Fallen Soldiers, and Democracy for

23   a Change events took place on the ASU campus.

24            Plaintiffs also request that the Court take judicial notice of Exhibits D, H, I, and K,

25   which are internet printouts of information on various websites, to establish the fact that the

26   Body Image Project, the October 13th Alliance, and the Arizona Alliance for Peace & Justice

27   are not ASU campus organizations.  (Dkt. #97, p.4).  However, the status and affiliation of

28   these organizations is neither a subject that is generally known in this Court's jurisdiction,

1    nor is it a fact that is capable of ready and accurate determination by reference to the

2    information contained in the internet printouts in Exhibits D, H, I, and K.  Thus, the Court

3    declines to take judicial notice of Exhibits D, H, I, and K.

4

5              **C.   Mootness and Standing**

6              Defendants argue that to the extent that Plaintiffs seek to enjoin the enforcement of

7    allegedly vague and unwritten policies, ASU's codification of the one-zone requirement and

8    the insurance requirement requiring third parties to provide proof of insurance renders

9    Plaintiffs claims moot.  Plaintiffs rebut this contention by stating that their claims are not

10   moot because the voluntary cessation of harmful conduct exception to the mootness doctrine

11   applies to render their claims not moot.  (Plaintiff's Response to Defendant Ramage's Motion

12   for Summary Judgment, Dkt. #82, pp. 7-8).

13             Defendants also argue that Plaintiffs lack standing to seek injunctive relief because

14   ASU codified the insurance and one-zone requirements and thus there is no on-going

15   challenged conduct and Plaintiffs no longer suffer a future threat of the enforcement of

16   allegedly vague and unwritten policies.  In addition, Defendants contend that to the extent

17   Plaintiffs seek legal relief, they have not established any concrete injury because ASU's

18   insurance policy applies to vendors and third-parties, not students or student organizations

19   such as ASU Students for Life.  Further, Defendants contend that Plaintiff White lacks

20   standing to seek declaratory and injunctive relief because Plaintiff White is no longer a

21   student at ASU.

22             Plaintiffs, on the other hand, argue that they do possess standing to obtain injunctive

23   relief because they assert as-applied and facial challenges to ASU's insurance and one-zone

24   requirements that, although at the time of the alleged deprivation of their constitutional rights

25   were allegedly vague and unwritten but are now codified in ASU policy USI 802-01, remain

26   unconstitutionally overbroad.  In addition, Plaintiffs contend that they possess standing

27   because they suffered a concrete injury when Defendants deprived them of their First

28   Amendment freedoms.  Thus, Plaintiffs contend that they suffered nominal damages, as well

1    as actual damages in the amount of $103.25, the cost of the insurance rider that ASU
2    Students for Life obtained in order to satisfy ASU's insurance requirement so that they could
3    display the JFA exhibit on the ASU campus.

4

5            1. **Mootness**

6            Standing and mootness are jurisdictional elements that derive from the Article III
7    requirement that federal courts only decide live cases and controversies. See Cole v. Oroville
8    Union High School Dist., 228 F.3d 1092, 1098 (9th Cir. 2000); see also Burke v. Barnes, 479
9    U.S. 361, 363 (1987) ("Article III of the Constitution requires that there be a live case or
10   controversy at the time that a federal court decides the case."). A cause of action is moot
11   when a live case or controversy no longer exists. City of Erie v. Pap's A.M., 529 U.S. 277,
12   287 (2000). However, a cause of action will be considered moot only "if an event occurs that
13   makes it impossible for the court to grant any effectual relief whatever to a prevailing party."
14   Church of Scientology of Cal. V. United States, 506 U.S. 9, 12 (1992) (quotations omitted).

15           "[T]he mere voluntary cessation of alleged unlawful activity does not render those
16   allegations moot." Lindquist v. Idaho State Bd. Of Corrections, 776 F.2d 851, 854 (9th Cir.
17   1985). Because if mere voluntary cessation mooted a case, "courts would be compelled to
18   leave the defendant to return to his old ways." United States v. Concentrated Phosphate Exp.
19   Ass'n, 393 U.S. 199, 203-04 (1968) (citation omitted). Thus, courts are "particularly
20   cautious when a case has become moot because the defendant has voluntarily ceased to
21   pursue the challenged course of action." Smith v. Univ. of Wash. Law Sch., 233 F.3d 1188,
22   1194 (9th Cir. 2000). A cause of action is not moot if there is a reasonable expectation that
23   the same complaining party will be subjected to the same action again. See Cole, 228 F.3d
24   at 1098 (citing Spencer v. Kemna, 523 U.S. 1, 17 (1998)).

25           "It is well-settled that once a student graduates, he no longer has a live case or
26   controversy justifying declaratory an injunctive relief against a school's action or policy."
27   Id. (citing Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 798 (9th Cir. 1999). It is
28   undisputed that Plaintiff White graduated from ASU in December 2006. Thus, this court has

1    no jurisdiction to entertain his claims for equitable relief.  However, the court must also

2    consider whether Plaintiff ASU Students for Life and the remaining student Plaintiffs may

3    maintain their claims for equitable relief.  To the extent that the remaining Plaintiffs assert

4    causes of action based on the alleged vagueness of ASU's insurance and one-zone

5    requirements and the unfettered discretion with which Defendants applied them, their claims

6    are moot.  Although it is true that ASU policy STA 503-01, effective when Plaintiffs

7    requested multiple zones for the JFA exhibit, did not explicitly limit student organizations

8    to one zone per day or explicitly state that ASU's insurance requirements applied to all third-

9    parties, ASU later codified those requirements when ASU policy STA 503-01 was

10   renumbered to USI 802-01.  As such, since ASU's challenged insurance and one-zone

11   requirements are now explicitly codified in ASU policy USI 802-01, they are no longer

12   vague; and to the extent that Defendants and other ASU administrators previously had

13   unfettered discretion to apply the requirements, they no longer have such discretion.  Thus,

14   this court has no jurisdiction to entertain Plaintiffs' claims for equitable relief to the extent

15   that Plaintiffs challenge the vagueness and accompanying discretionary application of ASU's

16   insurance and one-zone requirements unless an exception to mootness applies.

17          In addition, the voluntary cessation of harmful conduct exception does not apply in

18   this case.  A case will not become moot if a defendant has voluntarily ceased to pursue the

19   challenged course of action unless it can be said with assurance there is no reasonable

20   expectation that the alleged violation will recur.  See Los Angeles County v. Davis, 440 U.S.

21   625, 631 (1979). Although Plaintiffs are correct that ASU voluntarily codified its insurance

22   and one-zone requirements and thus remains free to change these policies, the Court can find

23   no indication or incentive for ASU to do so.  The insurance and one-zone requirements now

24   codified in ASU policy USI 802-01 are the same as those that Plaintiffs contend were

25   previously unwritten and unconstitutionally vague.  ASU merely codified the insurance and

26   one-zone requirements that both parties contend were previously in place, and there is no

27   indication or reasonable expectation that ASU will revert back to having and applying

28   allegedly unwritten and vague insurance and one-zone requirements.  Thus, Plaintiffs

1    equitable claims with respect to their vagueness challenge to ASU's insurance and one-zone
2    requirements are moot.

3

4            2. **Standing**

5            In order to establish standing, a plaintiff must show injury in fact, causation, and
6    redressability. Prescott v. County of El Dorado, 298 F.3d 844 (9th Cir. 2002) (citing Friends
7    of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81
8    (2000)). In other words, a plaintiff must establish a "(1) legally recognized injury, (2) caused
9    by the named defendant that is (3) capable of legal or equitable redress." Schmier v. U.S.
10   Court of Appeals for the Ninth Circuit, 279 F.3d 817, 820-21 (9th Cir. 2002) ("The party
11   seeking to invoke the jurisdiction of the federal courts has the burden of alleging specific
12   facts sufficient to satisfy these three elements."). An injury must be "actual or imminent, not
13   conjectural or hypothetical." Cole, 228 F.3d at 1100 (citing Whitmore v. Arkansas, 495 U.S.
14   149, 155 (1990) (quotations ommitted)). In addition, to the extent that a plaintiff seeks
15   declaratory and injunctive relief, he or she must demonstrate a likelihood of future harm or
16   repeated injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1982); see also B.C.
17   v. Plumas Unified School Dist., 192 F.3d 1260, 1264 (9th Cir. 1999).

18           In the First Amendment context, "[l]itigants . . . are permitted to challenge a statute
19   not because their own rights of free expression are violated, but because a judicial prediction
20   or assumption that the statute's very existence may cause others not before the court to
21   refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413
22   U.S. 601, 612 (1973). Thus, a plaintiff may assert an overbreadth challenge to a statute if
23   "the plaintiff argues that the statute is written so broadly that it may inhibit the
24   constitutionally protected speech of third parties, even if his own speech may be prohibited."
25   Id. However, "[a]n overbreadth claim is essentially a claim that a statute may be
26   constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress
27   the speech of others not before the court. This theory presupposes that the ordinance is
28   constitutional as applied to the plaintiff." Outdoor Media Group, Inc. v. City of Beaumont,

1    506 F.3d 895 (9th Cir. 2007) (citing <u>Members of City Council of City of Los Angeles v.</u>

2    <u>Taxpayers for Vincent</u>, 466 U.S. 789, 798 (1984)).   Moreover, "'[o]n an overbreadth

3    challenge [a plaintiff] would also be barred from collecting § 1983 damages which are

4    available only for violations of a party's own constitutional rights.'" <u>Id.</u> (quoting <u>Advantage</u>

5    <u>Media, L.L.C. v. City of Eden Prairie</u>, 456 F.3d 793, 801 (8th Cir.2006)).  Here, Plaintiffs

6    simply contend that ASU's insurance and one-zone requirements are unconstitutional in

7    general, both as applied to them and as applied to others; Plaintiffs do not contend that the

8    insurance and one-zone requirements are constitutional as applied to them.  In addition,

9    Plaintiffs seek to collect § 1983 damages for alleged violations of their own constitutional

10    rights.  Thus, Plaintiffs may not sustain an overbreadth challenge to ASU's insurance and

11    one-zone requirements.

12      "[T]he loss of First Amendment freedoms, for even minimal periods of time,

13    unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976).

14    A plaintiff may bring an as-applied challenge under the First Amendment if the plaintiff

15    "contends that the law is unconstitutional as applied to [his] particular speech activity" and

16    the "discriminatory enforcement of [the] speech restriction amounts to viewpoint

17    discrimination in violation of the First Amendment."  <u>Foti v. City of Menlo Park</u>, 146 F.3d

18    629, 635 (9th Cir. 1998).

19      Although Plaintiff White's graduation from ASU moots his equitable claims and he

20    also no longer has a personal interest in the outcome of this litigation in order to satisfy the

21    case or controversy requirement, the remaining student Plaintiffs and Plaintiff ASU Students

22    for Life do have personal interests in the outcome of this case.  Plaintiffs assert both as-

23    applied and facial constitutional challenges, arguing that ASU's insurance and one-zone

24    requirements, as now codified in ASU policy 802-01, are unconstitutionally overbroad and

25    constitute speech restrictions that were discriminatorily enforced and amount to content and

26    viewpoint discrimination in violation of the First Amendment.   Plaintiffs allege the

27    deprivation of their First Amendment freedoms.  Thus, Plaintiffs ASU Students for Life,

28

1   Brind'Amour, Combellick, and Malkoon satisfy the injury-in-fact requirement and possess

2   standing to bring their equitable claims in the instant action.

3       Moreover, "[a]lthough a student's graduation moots his claims for declaratory and

4   injunctive relief against school officials, it does not moot his damage claims." Cole, 228

5   F.3d at 1099. Thus, although Plaintiff White may no longer seek equitable relief since he has

6   graduated from ASU, the court must address his damage claims, as well as the damage and

7   equitable relief claims of the remaining Plaintiffs, and determine whether Defendants are

8   entitled to individual or qualified immunity for their decisions to enforce ASU's insurance

9   and one-zone requirements against Plaintiffs' JFA exhibit and Dignity of Life Week event.

10

11      **D.   The 11th Amendment and Immunity Under 42 U.S.C. § 1983**

12      Plaintiffs assert claims against Defendants in their individual capacities for actual and

13  nominal damages, and in their official capacities for declaratory and injunctive relief.

14  Defendants Crow and Ramage contend that 42 U.S.C. § 1983 excludes Plaintiffs' claims

15  against them in their individual capacities. In addition, all three Defendants argue that they

16  are entitled to qualified immunity under § 1983, and that the Eleventh Amendment bars

17  Plaintiffs' claims for declaratory and injunctive relief against them in their official capacities.

18      As an initial matter, the Eleventh Amendment bars an award of damages or

19  retrospective relief, against a state, state agency or state official sued in an official capacity.

20  Edelman v. Jordan, 415 U.S. 651, 676 (1974). However, it is well settled that suits seeking

21  prospective relief, i.e. declaratory and injunctive relief, against a state official in her official

22  capacity for an ongoing or threatened constitutional violation is not barred by the Eleventh

23  Amendment. See Ex parte Young, 209 U.S. 123 (1908). Defendants contend that the

24  Eleventh Amendment acts to bar Plaintiffs' claims against them in their official capacity.

25  However, Plaintiffs do not merely object to the past vagueness and application of ASU's

26  insurance and one-zone requirements against them. Although as discussed above, Plaintiffs

27  may not assert an overbreadth challenge, Plaintiffs also assert a facial challenge to ASU's

28  insurance and one-zone requirements under the First Amendment. Defendants themselves

1   contend that the insurance and one-zone policies currently codified in ASU policy USI 802-

2   01 are the same policies that were previously in place, albeit explicitly unwritten, under ASU

3   policy STA 503-01.  Thus, although ASU's subsequent codification of the requirements may

4   prohibit Plaintiffs from challenging the vagueness of those requirements, Plaintiffs' contend

5   that the insurance and one-zone requirements constitute content and viewpoint discrimination

6   under the First Amendment, as they existed at the time they were applied to Plaintiffs' events

7   and as they similarly exist now.  And since Defendants state that the challenged requirements

8   are currently and consistently being applied to student organizations, the Court finds that

9   Plaintiffs do sufficiently allege an ongoing or threatened violation, and as such, the Eleventh

10  Amendment does not bar Plaintiffs' claim for declaratory and injunctive relief.

11

12              **1. 42 U.S.C. § 1983**

13          Defendants contend that they are entitled to qualified immunity under 42 U.S.C. §

14  1983.  "Liability under section 1983 arises only upon a showing of personal participation by

15  the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Rounds v.

16  Oregon State Bd. of Higher Educ., 166 F.3d 1032, 1036 n. 2 (9th Cir. 1999) ("[P]laintiffs

17  suing state officials in both their official and individual capacities must allege a connection

18  between the state official and the allegedly unconstitutional action.").  A supervisor is only

19  liable for constitutional violations of his or her subordinates if he or she participated in or

20  directed the violations, or knew of the violations and failed to act to prevent them; "[t]here

21  is no respondeat superior liability under section 1983."  Id.; see Menotti v. City of Seattle,

22  409 F.3d 1113, 1149 (9th Cir. 2005).

23          Defendants contend that Plaintiffs have submitted no evidence to establish that

24  Defendant Crow knew of the challenged actions, let alone personally participated in them.

25  The Court agrees.  Plaintiffs argue that Defendant Crow was "constructively aware of the

26  imposition of the insurance requirement on Plaintiffs' event" because the event was

27  discussed over e-mail that included his chief of staff.  (Plaintiffs' Response to Defendant

28  Crow's Motion for Summary Judgment, Dkt. #81, p.9).  Plaintiffs' also argue that Defendant

1   was aware of the allegedly unconstitutional insurance and one-zone requirements because
2   he is familiar with the policies of the university that affect academic freedom and the First
3   Amendment.  (Id., p.10).  However, these contentions do little more than exhibit the paucity
4   of evidence that exists to establish that Defendant Crow is somehow individually liable for
5   the challenged actions.  Plaintiffs' contention that Defendant Crow, as President of ASU, is
6   familiar with and ultimately responsible for ASU policy is the definition of respondeat
7   superior liability, which is not permitted under section 1983.  Thus, Plaintiffs may not assert
8   a claim for damages against Defendant Crow in his individual capacity under 42 U.S.C. §
9   1983.

10          On the other hand, the Court finds that Plaintiffs have submitted sufficient evidence
11  to suggest that Defendant Ramage knew of the challenged conduct.  Defendant Ramage was
12  the Interim Vice President for Student Affairs during the relevant time period in this case,
13  and although Plaintiffs submit no evidence to establish that Defendant Ramage was
14  personally involved in the challenged actions, the evidence submitted by Plaintiffs
15  sufficiently indicates that Defendant Ramage knew of the insurance and one-zone
16  requirements and the controversy surrounding the JFA exhibit.  The emails submitted as
17  evidence by Plaintiffs and Defendant Ramage's own testimony that she recalled seeing an
18  email concerning the JFA exhibit indicates that Defendant Ramage was aware of the JFA
19  exhibit, and perhaps the challenged conduct.  (Plaintiffs' Response to Defendant Crow's
20  Motion for Summary Judgment, Dkt. # 81, Ex. 1 and 2).  Viewing the evidence on this issue
21  in the light most favorable to Plaintiffs and drawing any reasonable inferences in Plaintiffs'
22  favor on summary judgment, the Court finds that Plaintiffs may assert a claim for damages
23  against Defendant Ramage in her individual capacity under 42 U.S.C. § 1983.  In addition,
24  Defendants do not dispute that Defendant Schroeder was personally involved in applying
25  ASU's insurance and one-zone requirements to Plaintiffs, and thus Plaintiffs may also assert
26  a claim for damages against Defendant Schroeder in her individual capacity under 42 U.S.C.
27  § 1983.

28

Nonetheless, "[w]hen government officials assert the defense of qualified immunity to an action under 42 U.S.C. § 1983, a court evaluating the defense must first determine whether the plaintiff has alleged the deprivation of a constitutional right and, if so, then determine whether the right was clearly established at the time of the alleged violation." Cole, 228 F.3d at 1101 (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)) (quotations omitted); see Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). In the present action, Defendants contend that Plaintiffs fail to meet their burden of establishing a genuine existence of a material fact regarding both the denial of Plaintiffs' constitutional rights and that Defendants' actions were the moving force behind the alleged constitutional deprivation. Accordingly, the Court must address the merits of Plaintiffs' claims and decide whether ASU's insurance and one-zone requirements violate Plaintiffs' First and Fourteenth Amendment rights.

### i. Deprivation of a Constitutional Right

Defendants contend that Plaintiffs have not presented any evidence that suggests that Plaintiffs were denied one of their constitutional rights. Specifically, Defendants contend that Plaintiffs cannot show that their First Amendment right to free speech and Fourteenth Amendment due process and equal protection rights have been violated by Defendants' actions and ASU's insurance and one-zone requirements.

A three-part framework is used to evaluate the constitutionality of a restriction on free speech. Cornelius v. NAACP Legal Defense and Educ. Fund, 473 U.S. 788, 797 (1985). First, the court must determine whether the speech at issue is protected; second, the court must identify the nature of the forum; and third, the court must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard. Id. The parties do not dispute that Plaintiffs' speech is protected under the First Amendment. However, the parties do dispute the nature of the forum at issue in the instant action.

1    "The extent to which the government may limit speech that is protected by the First

2    Amendment depends in large part upon the nature of the forum." Seidman v. Paradise Valley

3    Unified School District No. 69, 327 F.Supp.2d 1098, 1104 (D.Ariz. 2004).  There are three

4    types of forums: (1) public forums; (2) limited public forums; and (3) nonpublic forums.  Id.

5    A "public forum" is a place that has been traditionally open for public expression, such as

6    sidewalks or parks; and a "designated public forum" is created when the government

7    intentionally opens a nontraditional forum to public discourse.  Id.  On the other hand, a

8    "limited public forum" is a subcategory of designated public forums that refers to a type of

9    non-public forum that the government has intentionally opened to certain groups or to certain

10   topics.  Id.; see Arizona Life Coalition v. Stanton, 2008 WL 217012 at *8 (9th Cir. 2008).

11   If the forum is "public," either a traditional or designated, speakers cannot be excluded unless

12   it is "necessary to serve a compelling state interest" and the exclusion is "narrowly drawn to

13   achieve that interest."  Arizona Life Coalition, 2008 WL 217012 at *8 (citing Sammartano

14   v. First Judicial Dist. Court, 303 F.3d 959, 965 (9th Cir. 2002)).  However, if a forum is

15   "limited," the government may restrict access "as long as the restrictions are reasonable and

16   are not an effort to suppress expression merely because the government disagrees with the

17   speaker's viewpoint."  Seidman, 327 F.Supp.2d at 1104.

18        "The relevant forum is defined by the access sought by the speaker."  DiLoreto v.

19   Downey Unified School Dist. Bd. of Educ., 196 F.3d 958, 965 (9th Cir. 1999); see also

20   Cornelius, 473 U.S. at 801 ("[I]n defining the forum we have focused on the access sought

21   by the speaker.").  In this case, Plaintiffs seek indiscriminate access to the outdoor zones on

22   the ASU campus, and thus the relevant forum is those outdoor zones.

23        "The government does not create a public forum by inaction or by permitting limited

24   discourse, but only by intentionally opening a nontraditional public forum for public

25   discourse."  Hopper v. City of Pasco, 241 F.3d 1067, 1075 (9th Cir. 2001).  However, "[a]

26   policy purporting to keep a forum closed (or open to expression only on certain subjects) is

27   no policy at all for purposes of public forum analysis if, in practice, it is not enforced or if

28   exceptions are haphazardly permitted."  Id.  "When a forum involves school facilities, it may

be deemed a public forum only if school authorities have 'by policy or by practice' opened the forum 'for indiscriminate use' by the general public or some segment of the public.'" Id. (citing Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 (1988). If the school facilities "have been reserved for other intended purposes, communicative or otherwise, no public forum has been created." Id. (citing Hazelwood Sch. Dist., 484 U.S. at 267). The court must examine the selectivity with which the forum is open to particular forms of expression; "[t]he more restrictive the criteria for admission and the more control that is placed on access to the forum, the less likely it is that the forum will be deemed a designated public forum for First Amendment purposes." Id. (citing Hopper, 241 F.3d at 1074).

The outdoor zones on the ASU campus are open for use by student organizations to engage in expressive activity, subject to certain restrictions. (ASU policy STA 503-01, Dkt #67, Ex. 20; ASU policy USI 802-01, Dkt. #67, Ex. 21). In addition, ASU imposes greater restrictions on the ability of "vendors" to use the outdoor zones. (Id.) Both ASU policy STA 503-01, and its current successor, ASU policy USI 802-01, clearly reflect that there are a number of restrictions that ASU places on both student organizations and vendors with regards to their use of ASU's outdoor zones. Although the parties appear to acknowledge these restrictions, the parties specifically dispute the extent to which the insurance and one-zone restrictions are applied to student organizations and all off-campus groups or entities. Thus, Plaintiffs only contend that Defendants haphazardly applied two restrictions, the insurance and one-zone restrictions, out of a number of other restrictions that ASU applies with respect to the use of ASU's outdoor zones by student organizations and other groups or entities.

The Court recognizes that a policy purporting to limit a particular forum is no policy at all for the purposes of forum analysis, but the Court is not willing to find that the fact that the alleged haphazard application of one or two requirements in a policy that contains a number other limitations on the use of a forum somehow evidence that the government intended to open the forum to indiscriminate use. However, even if the Court found that Defendants did in fact haphazardly apply the insurance and one-zone requirements in these

1    two instances, that does not suggest a clear intent by ASU to open their outdoor zones, i.e.,
2    the forum at issue, for "indiscriminate" use.  Both ASU policy STA 503-01 and ASU policy
3    USI 802-01 establish that ASU does not intend to open its outdoor zones for indiscriminate
4    use by even its student organizations, let alone the general public.  Instead, the multiple
5    restrictions in ASU policy, that exist apart from the insurance and one-zone requirements,
6    establish an intention to restrict the use of the outdoor zones for off-campus groups as well
7    as student organizations, albeit to a different extent.  Even if Defendants did in fact apply
8    some restrictions on the use of the relevant forum in a haphazard manner, that finding would
9    not indicate that Defendants intended to create a forum for indiscriminate use by either
10   student organizations or the general public because other restrictions on the use of the
11   outdoor zones remained in place under STA 503-01.  In addition, Plaintiffs offer no evidence
12   to suggest that these other restrictions were not consistently applied.

13          Nonetheless, Plaintiffs cite the Court to a footnote in Widmar v. Vincent for the notion
14   that the Supreme Court "has recognized that the campus of a public university, at least for
15   its students, possesses many of the characteristics of a public forum."  454 U.S. 263, 268 n.
16   5 (1981).  However, in that same footnote, the Supreme Court went on to state that it "has
17   not held, for example, that a campus must make all of its facilities equally available to
18   students or nonstudents alike, or that a university must grant free access to all of its grounds
19   or buildings."  Id.  Moreover, Widmar is inapposite to this case, because there the university
20   policy excluded all religious student groups from all use of university facilities that were
21   generally available for the activities of registered student groups.  Id. at 264-65.  Here,
22   Plaintiffs do not contend that they were excluded from the use of the outdoor zones, and nor
23   do Plaintiffs contend that ASU does not place a number of restrictions on the use of the
24   outdoor zones other than the challenged insurance and one-zone restrictions.  Instead,
25   Plaintiffs contend that the outdoor zones constitute a designated public forum merely because
26   ASU purports not to place restrictions on the content of the speech that student organizations
27   may engage in on the outdoor zones.  However, ASU does place restrictions on the extent
28   to which student organizations and off-campus groups or entities may engage in expressive

activity in the outdoor zones[1], and thus the Court cannot find that ASU intentionally opened its outdoor zones for indiscriminate use.  Accordingly, the Court finds that the outdoor zones on the ASU campus are a limited public forum, and as such, the Court must now turn to whether ASU's challenged restrictions are reasonable and are not an effort to suppress Plaintiffs' expression merely because Defendants disagree with Plaintiffs' viewpoint.

However, the Court must first address Plaintiffs' contention that ASU's insurance and one-zone requirements constitute prior restraints on speech.  "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communication are to occur."  Alexander v. United States, 509 U.S. 544, 550 (1993) (citation/quotation omitted).  "[G]overnment officials violate [the First Amendment] when their acts 'would chill or silence a person of ordinary firmness from future First Amendment activities.'"  White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Environmental Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  However, in this case, the challenged insurance and one-zone requirements do not prevent Plaintiffs from actually engaging in constitutionally protected speech.  Instead, the requirements merely place limitations on the extent to which Plaintiffs may engage in speech by limiting the number of outdoor zones that Plaintiffs can use and limiting the ease with which off-campus groups can come onto campus and participate in Plaintiffs' speech.  In addition, although Plaintiffs contend that the insurance and one-zone requirements "chill" First Amendment activities, they offer no evidence that any individual or organization has ever been prevented from engaging in First Amendment activities on ASU's outdoor zones.  Further, since the outdoor zones are a limited public forum, such requirements, as long as

---

[1]ASU's restrictions on the use of its outdoor zones are evident in both ASU policy USI 802-01 and its predecessor, STA 503-01.  (Dkt. #67, Ex. 20, 21).  Among other things, both policies limit the use of the outdoor zones to campus departments, student organizations, and sponsored community members; require advance reservation requests; limit the decibel level of events; place restrictions on the use of musical instruments and the sale of food; require consultation with ASU departments for certain types of events; confine activities to assigned areas; and place additional restrictions on vendors.

they are reasonable and are not an effort to suppress expression merely because of a disagreement with a particular viewpoint, are permissible.

Plaintiffs contend that ASU's insurance and one-zone requirements amount to content and viewpoint discrimination in violation of the First Amendment. "'Content discrimination' occurs when the government 'choos[es] the subjects' that may be discussed, while 'viewpoint discrimination' occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular view about a subject." Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1158 (9th Cir. 2007). "'[W]hether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based.'" Menotti, 4098 F.3d at 1129 (quoting City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 448 (2002)); see also Rosenbaum, 484 F.3d at 1158 ("It should be underscored . . . that '[a] regulation that serves some purpose unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers but not others.'") (quoting Ward, 491 U.S. at 791). Indeed, "government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech." Hill v. Colorado, 530 U.S. 703, 720 (2000). Plaintiffs offer no evidence that ASU's insurance and one-zone requirements were adopted "because of disagreement with the message it conveys."[2]   ASU's insurance and one-zone requirements are neither directed toward speech nor describe speech by content. Thus, the insurance and one-zone requirements are content-neutral.

---

[2]Plaintiffs' also contend that Defendants' application of ASU's insurance requirement to the JFA exhibit amounts to a "heckler's veto," which "is an impermissible content-based speech restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience." Rosenbaum, 484 F.3d at 1158. However, the risk of a "heckler's veto" arises "where a permittee might be subject to higher fees because of higher security costs associated with a hostile crowd." Id. (citing Forsyth County v. Nationalist Movement, 505 U.S. 123, 137 (1992). But although ASU requires a certificate of insurance from third parties, it does not provide insurance and thus has no influence on the cost of insurance required for any particular event. Moreover, Plaintiffs submit no evidence to indicate that the insurance required for the JFA exhibit was higher than it would have been for any other event, let alone higher based on a perceived security risk based on the content of speech.

"Restrictions on speech in the context of a limited public forum must be both viewpoint neutral and reasonable in light of the purpose served by the forum."  Hills v. Scottsdale Unified School Dist. No. 48, 329 F.3d 1044, 1050 (9th Cir. 2003).  In Arizona, state entities are generally subject to tort liability, and the state's self-insurance does not extend to claims arising from the acts and omissions of non-state actors.  See Stone v. Arizona Highway Comm'n, 93 Ariz. 384, 392 (1963); see also A.R.S. § 41-621.  As such, Defendants state that the purpose of ASU's insurance requirement is the protection of the university from liability for claims arising out of the acts and omissions of non-state actors. In addition, Defendants state that the purpose of ASU's one-zone requirement is the coordination of use among student organizations.  There is no indication that the purpose of either regulations is the preclusion of a particular expression.  See Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1036 (9th Cir. 2006)[3].  Thus, although the insurance and one-zone requirements may limit the extent with which Plaintiffs may engage in their speech, specifically by limiting the number of outdoor zones that Plaintiffs may use and limiting the ease with which off-campus groups may come onto campus to participate in Plaintiffs' speech, the regulations place no more than an incidental burden on speech and are reasonable in light of the purpose of the forum.

"Despite the neutral content of a statute on its face, however, a statute as-applied may be constitutionally infirm if its enforcement is based on viewpoint discrimination." Rosenbaum, 484 F.3d at 1158.  "[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject."  Cornelius, 473 U.S. at 806; see also Lamb's Chapel v. Center Moriches

---

[3]Plaintiffs cite the Court to Santa Monica Food Not Bombs for the proposition that because this case involves an insurance requirement, it must be narrowly tailored to further a significant government interest.  (Dkt. #83, p.14).  However, Santa Monica Food Not Bombs does not support that proposition.  In Santa Monica Food Not Bombs, the Ninth Circuit applied the requirement of narrowly tailoring because the forum at issue was a traditional public forum, and as such, requires that the regulation at issue be narrowly tailored to further a significant government interest.  450 F.3d at 1035, 1036.

1    Union Free School District, 508 U.S. 384, 394 (1993) ("[T]he First Amendment forbids the

2    government to regulate speech in ways that favor some viewpoints or ideas at the expense

3    of others.") (quotations omitted).  Plaintiffs contend that because "Defendants did not

4    produce a single example of an expressive event involving a non-campus entity prior to the

5    JFA exhibit where insurance was required," ASU's insurance and one-zone requirements are

6    not viewpoint neutral.  (Dkt. #83, p.13).  However, in order to engage in viewpoint

7    discrimination, the government must discourage a particular viewpoint on a given subject,

8    and advance the opposite viewpoint on that subject.  See Hills, 329 F.3d at 1050, 1051; see

9    also U.S. v. Kokinda, 497 U.S. 720 (1990) ("Clearly, the regulation does not discriminate on

10   the basis of content or viewpoint.  Indeed, '[n]othing suggests the Postal Service intended to

11   discourage one viewpoint and advance another. . . . [T]he Postal Service is not granting to

12   one side of a debatable public question . . . a monopoly in expressing its views.'") (quoting

13   Monterey County Democratic Central committee v. United States Postal Service, 812 F.2d

14   1194, 1198-99 (9th Cir. 1987)).

15          Plaintiffs have submitted no evidence to indicate that Defendants' application of

16   ASU's insurance and one-zone requirements regulated the extent of Plaintiffs' speech based

17   on the ideology of Plaintniffs' message.  Although Plaintiffs contend that the lack of

18   evidence in the record that Defendants applied the insurance and one-zone requirements to

19   other student organizations and off-campus third-parties prior to Plaintiffs' JFA exhibit

20   establishes viewpoint discrimination, that lack of evidence does not somehow establish that

21   Defendants discriminated against Plaintiffs based on their viewpoint or ideological message.

22   Plaintiffs have simply submitted no evidence to indicate that the insurance and one-zone

23   requirements were applied to Plaintiffs' speech based on its message, whereas it wasn't

24   applied to other organizations based on their message, let alone that it was not applied to the

25   opposite, pro-choice viewpoint.  Indeed, the record indicates that Plaintiffs' requested an

26   unprecedented number of zones for the JFA exhibit, which supports a finding that the

27   insurance and one-zone requirements were applied in this case based on that fact.  As such,

28   the Court cannot find that Defendants' enforcement of ASU's insurance and one-zone

1   requirements in this case was based on viewpoint discrimination. Thus, ASU's insurance and

2   one-zone requirements do not violate the First Amendment because they are both content and

3   viewpoint neutral, and they are reasonable in light of the purpose served by ASU's

4   designated outdoor zones.

5       The Court notes that Plaintiffs also contend that ASU's insurance and one-zone

6   requirements violate Plaintiffs' rights to due process and equal protection under the

7   Fourteenth Amendment. A statute that "either forbids or requires the doing of an act in terms

8   so vague that men of common intelligence must necessarily guess at its meaning and differ

9   as to its application violates the first essential of due process of law." Connally v. Gen.

10  Constr. Co., 269 U.S. 385, 291 (1926). As such, Plaintiffs' due process claim relies on

11  Plaintiffs' argument that ASU's insurance and one-zone requirements are unconstitutionally

12  vague. However, as discussed above, that claim is moot given the codification of the

13  challenged requirements in ASU policy 802-01. Thus, Plaintiffs may not sustain a due

14  process claim.        In addition, "the viability of equal protection claims relating to

15  expressive conduct is contingent upon the existence of a public forum. Only when rights of

16  access associated with a public forum are improperly limited may we conclude that a

17  fundamental right is impinged." Center for Bio-Ethical Reform v. City and County of

18  Honolulu, 455 F.3d 910, 924 (9th Cir. 2006) (citation omitted). As such, Plaintiffs' equal

19  protection claim relies on a finding that Defendants' unconstitutionally burdened the exercise

20  of Plaintiffs' fundamental right to free speech. See United States v. Hancock, 231 F.3d 557,

21  565 (9th Cir. 2000) (stating that strict scrutiny applies under the equal protection clause if the

22  governmental action "targets a suspect class or burdens the exercise of a fundamental right");

23  see also Police Dept. of Chicago v. Mosley, 408 U.S. 92, 96 (1972) ("Necessarily, then,

24  under the Equal Protection Clause, not to mention the First Amendment itself, government

25  may not grant the use of a forum to people whose views it finds acceptable, but deny use to

26  those wishing to express less favored or more controversial views."). But as discussed

27  above, the outdoor zones on the ASU campus are a limited public forum and ASU's

28

insurance and one-zone requirements do not violate Plaintiffs' right to free speech.  Thus, Plaintiffs may not sustain an equal protection claim.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiffs' motion for judicial notice (Dkt. #97) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment (Dkt. #64) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' cross-motions for summary judgment (Dkt. #s 76, 77, 78) are GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 7th day of March, 2008.

Mary H. Murguia
United States District Judge